FILED
Clerk
District Court

1 SHAWN N. ANDERSON
  United States Attorney
2 Districts of Guam and the NMI
  Sirena Plaza, Suite 500                              JUN 2 5 2024
3 108 Hernan Cortez Avenue
  Hagåtña, Guam 96910                          for the Northern Mariana Islands
4 PHONE: (671) 472-7332                        By_____JP_____
  FAX: (671) 472-7215                                  (Deputy Clerk)
5
  MATTHEW G. OLSEN
6 Assistant Attorney General
  for National Security
7
  MATTHEW J. McKENZIE
8 Deputy Chief
  Counterintelligence and Export Control Section
9 National Security Division
  950 Pennsylvania Ave, NW
10 Washington, DC 20530

11 Attorneys for the United States of America

12              IN THE UNITED STATES DISTRICT COURT

13              FOR THE NORTHERN MARIANA ISLANDS

14
   UNITED STATES OF AMERICA,
15                                        CRIMINAL CASE NO. CR - 24 · 00014
            Plaintiff,
16
         vs.
17                                               **PLEA AGREEMENT**
   JULIAN PAUL ASSANGE,
18
            Defendant.
19

20      Plaintiff, United States of America, by and through Shawn N. Anderson, United States

21 Attorney for the Districts of Guam and the Northern Mariana Islands ("NMI"), Matthew G. Olsen,

22 Assistant Attorney General for National Security, and Matthew J. McKenzie, Deputy Chief, National

23 Security Division, and Defendant JULIAN PAUL ASSANGE and the Defendant's counsel, Barry

24 Pollack, agree to the following Plea Agreement:

   PLEA AGREEMENT - 1

1)       <u>Guilty Plea and Maximum Statutory Penalties</u>:

The Defendant, JULIAN PAUL ASSANGE, agrees to waive indictment by a grand jury in this district and agrees to plead guilty to an Information charging the Defendant with conspiracy to obtain documents, writings, and notes connected with the national defense, and willfully communicate documents relating to the national defense, from a person having both lawful and unauthorized possession of same, in violation of 18 U.S.C. § 793(g). The Defendant understands that this is a felony which carries a maximum penalty of: not more than a ten-year term of imprisonment; a fine not to exceed $250,000; not more than a three-year term of supervised release; restitution; and a $100.00 special penalty assessment.

2)       <u>Effect on Immigration Status</u>:

The Defendant recognizes that pleading guilty may have consequences with respect to the Defendant's immigration status if the Defendant is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses. The Defendant understands that the Defendant's removal and other immigration consequences are the subject of a separate proceeding. The Defendant further understands that because the Defendant is not a citizen of the United States, the Defendant's guilty plea and conviction make it practically inevitable and a virtual certainty that the Defendant will be removed or deported from the United States. The Defendant agrees that the Defendant's attorney has told the Defendant this and the Defendant still wants to plead guilty, even if the consequence is the Defendant's automatic removal from the United States.

3)       <u>The Court's Role in Plea and Sentencing Procedure</u>:

The Court is not a party to this Plea Agreement.

The Defendant understands that this is a Plea Agreement pursuant to Fed. R. Crim. P. 11(c)(1)(C) and therefore the specific disposition recommended in paragraph 10) will bind the Court once the Court accepts this Plea Agreement.

PLEA AGREEMENT - 2

1    The Defendant further understands that both the United States and the Defendant will have the

2    option to withdraw from this Plea Agreement if the Court rejects the Plea Agreement.

3    4)          Waiver of Constitutional Rights:

4    The Defendant, JULIAN PAUL ASSANGE, understands that by entering this plea of guilty

5    the Defendant is knowingly and voluntarily waiving certain constitutional rights, including:

6              a)       The right to a jury trial;

7              b)       The right to see, hear and question the witnesses;

8              c)       The right to remain silent at trial;

9              d)       The right to testify at trial; and

10             e)       The right to compel witnesses to testify.

11   While the Defendant is waiving certain constitutional rights, the Defendant understands the

12   Defendant retains the right to be assisted through the sentencing and any direct appeal of the

13   conviction and sentence by an attorney, who will be appointed at no cost if the Defendant cannot

14   afford to hire an attorney.  The Defendant also acknowledges that any pretrial motions currently

15   pending before the Court are waived.

16   The Defendant also acknowledges that he has the right to challenge the extradition request

17   lodged in the United Kingdom by the United States.  The Defendant acknowledges that he is

18   knowingly and voluntarily entering this agreement with the understanding that, pursuant to this

19   agreement, the United States will, among other things, withdraw the extradition request following

20   the Defendant's guilty plea and sentencing, as described in paragraph 10(b).

21   5)          Discovery:

22   As part of this Plea Agreement, and based upon the concessions of the United States in this

23   Plea Agreement, the Defendant knowingly, willingly, and voluntarily gives up the right to seek any

24

PLEA AGREEMENT - 3

1 additional discovery.  Further, the Defendant knowingly, willingly, and voluntarily waives all

2 pending requests for discovery.

3 6)      Venue:

4          The Defendant waives any objections to venue and consents to being charged in the District

5 of the NMI with the offense listed in the Information.  To the extent the Defendant subsequently

6 withdraws from this agreement, the Defendant hereby acknowledges that the Eastern District of

7 Virginia is the appropriate venue as to the currently pending Indictment, 1:18-cr-111, and waives

8 any objections to such venue.

9 7)      Statute of Limitations:

10          The Defendant waives the applicability of any statute of limitations to the offense listed in

11 the Information.

12 8)      Elements of the Offense:

13          The United States and the Defendant agree that in order to convict the Defendant of

14 conspiracy to obtain documents, writings, and notes connected with the national defense and

15 willfully communicate documents relating to the national defense in violation of 18 U.S.C. § 793(g),

16 the United States would have to prove beyond a reasonable doubt the following elements:

17          a)      First, a conspiracy, agreement, or understanding was formed, reached, or

18                  entered into by two or more persons to violate 18 U.S.C. §§ 793(c)-(e);

19          b)      Second, at some time during the existence or life of the conspiracy,

20                  agreement, or understanding, the Defendant knew the purpose of the agreement, and, with

21                  that knowledge, then deliberately joined the conspiracy, agreement, or understanding; and

22          c)      Third, at some time during the existence or life of the conspiracy, agreement,

23                  or understanding, one of its alleged members knowingly performed an overt act as charged in

24                  the Information and did so in order to further or advance the purpose of the agreement.

PLEA AGREEMENT - 4

1    The United States and the Defendant agree that the objects of the conspiracy were to: 1)
2    obtain documents connected with the national defense, for the purpose of obtaining information
3    respecting the national defense; and 2) willfully communicate documents relating to the national
4    defense, including for which the communicant did not have authorized possession, to a person not
5    entitled to receive them.

6    9)          Factual Basis and Statement of Facts:

7    The United States and the Defendant stipulate and agree that the following facts are accurate;
8    that the United States could prove these facts beyond a reasonable doubt at trial; and that these facts
9    constitute an adequate factual basis for the Defendant's guilty plea.

10    The Defendant was born on July 3, 1971, and is a citizen of Australia.

11    Between in or about 2009 and continuing until in or about at least 2011, outside the jurisdiction
12    of any particular state or district of the United States, the defendant, JULIAN PAUL ASSANGE, who
13    was not a citizen of the United States and who did not have authorization to possess, access, or control
14    documents, writings, or notes relating to the national defense, including classified information,
15    knowingly and unlawfully conspired with former U.S. Army intelligence analyst Chelsea Manning,
16    who held a TOP SECRET U.S. security clearance, to willfully and unlawfully obtain, deliver, transmit,
17    and communicate documents, writings, and notes relating to the national defense, including classified
18    information, to persons not entitled to receive such items and information, including the Defendant
19    himself. The Defendant maintained and controlled a public website, WikiLeaks, which for a period
20    of time described itself as the "first intelligence agency of the people."

21    From at least 2009 and continuing through at least 2010, the Defendant publicly solicited
22    information from people who had then current or prior access to classified information to provide that
23    information to the Defendant. The Defendant's website, Wikileaks, stated "WikiLeaks accepts
24

PLEA AGREEMENT - 5

1  classified, censored, or otherwise restricted material of political, diplomatic, or ethical significance"
2  and also publicly hosted a "Draft: Most Wanted Leaks" list.

3      As of November 2009, WikiLeaks's public "Draft: Most Wanted Leaks" list for the United
4  States included:

5          i.  "Bulk Databases," including an encyclopedia used by the United States
6              intelligence community, called "Intellipedia," and the unclassified, but non-
7              public, Central Intelligence Agency ("CIA") Open Source Center database; and

8          ii. "Military and Intelligence" documents, including documents that WikiLeaks
9              described as classified up to the SECRET level, for example, "Iraq and
10             Afghanistan Rules of Engagement 2007-2009 (SECRET)"; operating and
11             interrogation procedures at Guantanamo Bay, Cuba; documents relating to
12             Guantanamo detainees; CIA detainee interrogation videos; and information
13             about certain weapons systems.

14     The Defendant also publicly encouraged people to obtain the information he desired and to
15 send that information to the Defendant at WikiLeaks. The Defendant also said that unless they were
16 "a serving member of the United States military," those providing classified information would have
17 no legal liability for giving such classified information to him because "TOP SECRET" meant nothing
18 as a matter of law.

19     Under Executive Order 13526, information in any form may be classified if it: (1) is owned
20 by, produced by or for, or is under the control of the U.S. Government; (2) falls within one or more of
21 the categories set forth in the Executive Order (TOP SECRET, SECRET, and CONFIDENTIAL); and
22 (3) is classified by an original classification authority who determines that its unauthorized disclosure
23 reasonably could be expected to result in damage to the national security of the United States.

24

PLEA AGREEMENT - 6

1    Information is classified as SECRET if the unauthorized disclosure of that information reasonably

2    could be expected to cause serious damage to the national security of the United States.

3         Pursuant to Executive Order 13526, information classified at any level can be lawfully

4    accessed only by persons determined by an appropriate U.S. Government official to be eligible for

5    access to classified information, who have signed an approved non-disclosure agreement, received a

6    security clearance, and have a "need-to-know" the classified information.

7         From 2009 to 2010, Manning was a U.S. Army intelligence analyst deployed to Forward

8    Operating Base Hammer in Iraq. Manning held a "TOP SECRET" U.S. security clearance, and had

9    executed a Classified Information Nondisclosure Agreement, which acknowledged, among other

10   things, that the unauthorized disclosure of classified information could cause damage or irreparable

11   injury to the United States and that Manning would not divulge classified information without prior

12   authorization from the relevant government agency.

13        Between January 2010 and May 2010, Manning used U.S. Government computer systems to

14   download hundreds of thousands of documents and reports, many of them classified at the SECRET

15   level and relating to the national defense. In doing so, Manning downloaded four nearly complete

16   databases from departments and agencies of the United States that contained, among other things,

17   approximately 90,000 Afghanistan war-related significant activity reports, 400,000 Iraq war-related

18   significant activity reports, 800 Joint Task Force Guantanamo ("JTF GTMO") detainee assessment

19   briefs, and 250,000 U.S. State Department cables. During this time period, Manning also downloaded

20   multiple classified files relating to the U.S. military's Rules of Engagement ("ROE") in Iraq from the

21   U.S. Government's secure communication network called the Secret Internet Protocol Router Network

22   ("SIPRNet"). After downloading digital reams of classified documents and files, Manning, without

23   authorization, electronically sent them to the Defendant understanding that at least some of them

24   would be publicly posted on WikiLeaks's website. Many of the documents and files that Manning

PLEA AGREEMENT - 7

1  downloaded and sent to the Defendant contained information that was classified up to the SECRET
2  level.

3      During the time period surrounding Manning's passage of classified materials to WikiLeaks,
4  Manning and the Defendant communicated via online platforms about Manning's progress.

5      On March 7, 2010, Manning asked the Defendant how valuable the JTF GTMO detainee
6  assessment briefs were.  The Defendant suggested they were likely of interest and, on March 8, 2010,
7  Manning told the Defendant that Manning was "throwing everything [Manning had] on JTF GTMO
8  at [the Defendant] now."  The Defendant responded, "ok, great!"

9      Later, on March 8, 2010, Manning used a Secure File Transfer Protocol ("SFTP") connection
10  to transmit the JTF GTMO detainee assessment briefs, classified SECRET and containing national
11  defense information, to a cloud drop box operated by WikiLeaks, with a directory that the Defendant
12  had designated for Manning's use.

13      After sending the classified JTF GTMO detainee assessment briefs to the Defendant, Manning
14  told the Defendant "thats [sic] all I really have got left."  To encourage Manning to continue to provide
15  United States classified documents that Manning had obtained without authorization and for which
16  Manning did not have authorization to transmit to Defendant and WikiLeaks, the Defendant replied,
17  "curious eyes never run dry in my experience."

18      On March 10, 2010, in response to Manning's earlier question about whether there was
19  "anything useful" in the "gitmo docs," the Defendant responded, in part, that "these sorts of things are
20  always motivating to other sources too."  The Defendant continued, "[h]ence the feeling is people can
21  give us stuff for anything not as 'dangerous as gitmo' on the one hand, and on the other, for people
22  who know more, there's a desire to eclipse."

23      In early 2010, in furtherance of the conspiracy, Manning again used her access to SIPRNet to
24  download the U.S. military's classified ROE in Iraq and, without authorization, sent them to the

PLEA AGREEMENT - 8

Defendant with the understanding that WikiLeaks may publicly disclose them. The Iraq ROE detailed the circumstances and limitations under which U.S. military forces in Iraq would initiate or continue combat operations and portions of the Iraq ROE constitute United States national defense information, the disclosure of which could be used to the injury of the United States or the advantage of a foreign nation.

Between March 28, 2010 and April 9, 2010, in furtherance of the conspiracy, Manning further accessed a U.S. Government database and downloaded over 250,000 U.S. State Department cables, which were classified up to the SECRET level. Manning then, without authorization, uploaded these cables to the Defendant through an SFTP connection to a Wikileaks cloud drop box with a specific directory designated for Manning's use.

By at least March 8, 2010, the Defendant knew that Manning was taking classified documents and materials from U.S. Government sources and, without authorization, offering to provide those materials to the Defendant with the understanding that at least some of them would be further disseminated publicly. The Defendant also knew that many of the classified materials that Manning was sending to the Defendant were classified up to the SECRET level. With this knowledge, the Defendant began publicly disclosing classified material on the internet in April 2010.

On April 5, 2010, the Defendant, through his website, released four Iraq ROE files that Manning had previously downloaded and, without authorization, sent to the Defendant. WikiLeaks titled the four documents: "US Rules of Engagement for Iraq; 2007 flowchart"; "US Rules of Engagement for Iraq; Refcard 2007"; "US Rules of Engagement for Iraq, March 2007"; and "US Rules of Engagement for Iraq, Nov 2006." While the "US Rules of Engagement for Iraq; Refcard 2007" document was unclassified, the other three documents were classified SECRET.

In or about 2010 and 2011, the Defendant publicly disclosed via WikiLeaks's website hundreds of thousands of documents that Manning had previously taken without authorization and given to him,

PLEA AGREEMENT - 9

1  including approximately 75,000 Afghanistan war-related significant activity reports, classified up to

2  the SECRET level; 400,000 Iraq war-related significant activity reports, classified up to the SECRET

3  level; 800 JTF GTMO detainee assessment briefs, classified up to the SECRET level; and over

4  100,000 U.S. State Department cables, some of which were classified up to the SECRET level.  Some

5  of these raw classified documents were publicly disclosed without removing or redacting all of the

6  personally identifiable information relating to certain individuals who shared sensitive information

7  about their own governments and activities in their countries with the U.S. government in confidence.

8        In an August 2010 panel discussion, the Defendant said it was "regrettable" that individuals

9  exposed through his website as having previously met with the United States government "may face

10 some threat as a result."  In the same panel discussion, the Defendant stated that "we [WikiLeaks] are

11 not obligated to protect other people's sources, military sources or spy organization sources, except

12 from unjust retribution," adding that, in general, "there are numerous cases where people sell

13 information . . . or frame others or are engaged in genuinely traitorous behavior and actually that is

14 something for the public to know about."

15        The actions of the Defendant, as recounted above, were in all respects knowing and deliberate,

16 and were not committed by mistake, accident, or other innocent reason.

17        This statement of facts is made for the limited purpose of supporting the Defendant's guilty

18 plea.  It therefore does not contain all facts relating to the underlying criminal conduct.  This

19 statement of facts does not preclude either party from presenting and arguing, for sentencing

20 purposes, additional facts which are relevant to the guideline computation or sentencing, unless

21 otherwise prohibited in this agreement.

22

23

24

PLEA AGREEMENT - 10

10)        The United States Agrees:

   a)            Dismissal(s):

        Following the Court's imposition of a sentence, the United States agrees to promptly move to dismiss the outstanding Indictment 1:18-cr-111 pending against the Defendant in the Eastern District of Virginia, which is the only federal Indictment currently pending against the Defendant.

   b)            Extradition:

        Following the Court's imposition of a sentence, the United States agrees to withdraw its pending request to the United Kingdom for the extradition of the Defendant.

        The United States agrees to not seek the extradition of the Defendant from any country other than the United Kingdom between the time that the parties sign the Plea Agreement and the time the Defendant appears in NMI, absent a breach of the Plea Agreement by the Defendant.

   c)            Not to File Additional Charges:

        The United States agrees not to bring any additional charges against the Defendant based upon conduct that occurred prior to the time of this Plea Agreement, unless the Defendant breaches this Plea Agreement.

11)        United States Sentencing Guideline Calculations:

        The Defendant understands and acknowledges that the United States Sentencing Guidelines (hereinafter "USSG") are applicable to this case and that the Court will determine the Defendant's applicable sentencing guideline range at the time of sentencing.  In determining a sentence, the Court is obligated to consider that range, possible departures or variances under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a).

   a)            Base Offense Level:

        The United States and the Defendant agree that the provisions of USSG § 2M3.3 apply, resulting in a Base Offense Level of **24** for conspiracy to obtain documents, writings, and notes

PLEA AGREEMENT - 11

1    connected with the national defense and willfully communicate documents relating to the national

2    defense classified at the Secret level.

3       b)                  Acceptance of Responsibility:

4        As a result of this agreement, the Defendant will enter a plea of guilty prior to the

5    commencement of trial, will truthfully admit his involvement in the offense and related conduct, and

6    will not engage in conduct that is inconsistent with such acceptance of responsibility. If all of these

7    events occur, and the Defendant's acceptance of responsibility continues through the date of

8    sentencing, a downward adjustment of 2 levels (-2) for acceptance of responsibility will be

9    appropriate. *See* USSG § 3E1.1(a) and Application Note 3.

10       c)                  Criminal History:

11        The United States and the Defendant agree that the Defendant's criminal history is category

12    I. However, the parties agree that the Defendant is not entitled to receive an adjustment pursuant to

13    U.S.S.G. § 4C1.1.

14       d)                  Resulting Offense Level:

15        The United States and the Defendant agree that the resulting total offense level is **22**. The

16    advisory guideline range resulting from these calculations is **41-51 months**.

17       e)                  Credit for Time Served:

18        The parties agree that the Defendant is entitled to credit for time served for the entire period

19    he has been incarcerated, pending extradition, at His Majesty's Prison Belmarsh, the Category A

20    men's prison in Thamesmead, London, England ("Belmarsh"). The parties further agree that the

21    Defendant entered Belmarsh on or about April 11, 2019, and, at the time of this agreement, has

22    served approximately **62** months in prison.

23    12)                Waiver of Presentence Investigation Report:

24

PLEA AGREEMENT - 12

1    The United States and the Defendant believe they can provide sufficient information to the

2    Court on the record to enable the Court to exercise meaningful sentencing discretion, pursuant to

3    18 U.S.C. § 3553. Thus, the United States and the Defendant request the Court waive the

4    preparation of the Presentence Investigation Report pursuant to Fed. R. Crim. P. 32(c)(1)(A)(ii).

5    13)    The Agreed Upon Sentence:

6    Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the Defendant and the United States jointly

7    recommend the following disposition:

8    a)    Length of Imprisonment:

9    Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the Defendant and the United States recommend

10   that the Defendant be sentenced to **time served**.

11   b)    Criminal Fine:

12   Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the Defendant and the United States recommend

13   that no fine will be imposed.

14   c)    Supervised Release:

15   Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the Defendant and the United States recommend

16   that, since the Defendant will leave the United States after his sentencing and not return without

17   authorization, the Defendant will not be subject to any term of supervised release.

18   d)    Restitution:

19   Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the Defendant and the United States recommend

20   that the Court not order restitution. It is further agreed that the United States will not pursue any

21   claim for restitution based on the monetary loss resulting from the significant remediation required

22   following the Defendant's disclosure of sensitive national defense information. As of the date of the

23   Plea Agreement, the United States has not identified any victim qualifying for individual restitution

24   and, thus, is not requesting an order of restitution.

PLEA AGREEMENT - 13

1    If the Court accepts the recommended disposition and is therefore bound by the joint

2  recommendation of the parties pursuant to Fed. R. Crim. P. 11(c)(1)(C) and imposes the disposition

3  described above, the Defendant agrees to promptly leave the United States after his sentencing and

4  never return without authorization.  The United States agrees to not seek to detain the Defendant in

5  order to allow for his prompt departure from the United States.

6    If the Court does not accept the Plea Agreement or otherwise sentences the Defendant to a

7  greater or lesser sentence than the United States and the Defendant have agreed upon, either the

8  Defendant or the United States or both may withdraw the plea and be bound by the terms of

9  paragraph 14.

10  14)    Delay in the Proceedings:  Delays Pursuant to Fed. R. Crim. P. 11(c)(3)(A):

11    a)  If, once the Defendant physically appears before the Court, the Court rejects the plea

12        agreement (pursuant to Fed. R. Crim. P. 11(c)(3)(A)), or if the Court accepts the plea but

13        then imposes a sentence that is inconsistent with the terms agreed upon in paragraph 13 and

14        either party thereafter withdraws from the plea, then:

15      i)  The United States and the Defendant agree jointly to recommend that the Defendant be

16          released on bail and permitted to travel to Australia.  If the Court detains the Defendant

17          based on the Information in this matter, the United States will promptly dismiss the

18          Information, subject to refiling at a later time (once the Defendant is not in custody), and

19          the United States will not seek to detain the Defendant pursuant to Indictment 1:18-cr-

20          111 pending against the Defendant in the Eastern District of Virginia.

21      ii)  The United States and the Defendant agree to negotiate in good faith for a period of no

22          more than 45 days to reach an acceptable resolution that allows for the Defendant's entry

23          of a guilty plea that will result in a sentence consistent with the 11(c)(1)(C) plea.

24

PLEA AGREEMENT - 14

A) A failure of either party to engage in good faith negotiations constitutes a breach of the agreement pursuant to paragraph 15;

B) If the negotiation period is expected to be brief, the parties may jointly agree that the Defendant remain in the United States pursuant to bail conditions acceptable to the Court in order to facilitate negotiations;

C) Absent agreement under subsection B) above, the parties agree that the Defendant shall travel to, and remain in, Australia until:

    i.    An acceptable agreement is reached and the Court schedules a date for the parties to appear (a date upon which the parties agree to physically appear before the Court); or

    ii.    The parties notify the Court that no agreement can be reached.

iii) In the event that, after good faith negotiations, a new, acceptable agreement cannot be reached:

A) The United States agrees to:

    i.    Dismiss the Information in NMI; and

    ii.    Withdraw the request for extradition currently pending in the United Kingdom.

B) The Defendant agrees that the Eastern District of Virginia would be the appropriate venue as to the currently pending Indictment, 1:18-cr-111, and waives any objections to such venue.

b)    <u>Other Delays</u>

The United States and the Defendant agree that, in the event that there is any delay in the proceedings after the Defendant physically appears before the Court, including a delay between the Defendant entering a plea of guilty to the Information and the Court imposing sentence, and that

PLEA AGREEMENT - 15

1    delay is caused by the United States, the Court, or any reason other than the Defendant's actions,

2    then the United States will not to seek to detain the Defendant on any basis pending sentencing or

3    the continuation of the proceedings.  The United States will recommend that the Defendant be

4    allowed to travel to Australia subject to bail conditions to be imposed by the Court.  The Defendant

5    agrees to abide by any such bail conditions and to return to Court as scheduled by the Court for

6    sentencing or otherwise.  If the Court detains the Defendant based on the Information in this matter,

7    the United States will promptly dismiss the Information, subject to refiling at a later time (once the

8    Defendant is no longer in custody), and the United States will not seek to detain the Defendant on

9    any basis, pending a resumption of the proceedings.

10        The United States and the Defendant further agree that, in the event that there is any delay in

11    the proceedings, including a delay between the Defendant entering a plea of guilty to the Information

12    and the Court imposing a sentence, that is intentionally caused by the Defendant, or which is the

13    result of the Defendant's intentional breach of this agreement, the Defendant shall return to the

14    custody of the United Kingdom.

15        The cause for any alleged delay by either party shall be determined by the Court.

16    15)    Breach of the Plea Agreement and Remedies:

17        This Plea Agreement is effective when signed by the Defendant, the Defendant's attorney,

18    and an attorney for the United States.  The Defendant agrees to entry of this Plea Agreement at the

19    date and time scheduled with the Court by the United States (in consultation with the Defendant's

20    attorney).

21

22

23

24

PLEA AGREEMENT - 16

a) <u>United States' Breach</u>:

If the United States withdraws from this agreement, or intentionally causes the Court to reject the Plea Agreement or otherwise violates any provision of this agreement, then the United States shall abide by the conditions of paragraph 10) and will dismiss the Information in NMI.

b) <u>Defendant's Breach</u>:

If the Defendant withdraws from this agreement for any reason other than if the Court rejects the Plea Agreement pursuant to Fed. R. Crim. P. 11(c)(1)(C) or imposes a sentence greater than the sentence recommended pursuant to the 11(c)(1)(C) plea, or commits or attempts to commit any additional federal, state, or local crimes prior to sentencing, or intentionally gives materially false, incomplete, or misleading testimony or information, or in any way intentionally causes the Court to reject the Plea Agreement or otherwise intentionally violates any provision of this agreement, then:

      i)    The United States will be released from its obligations under this agreement. The Defendant, however, may not withdraw the guilty plea entered pursuant to this agreement, to the extent a plea has been entered at the time of the breach.

      ii)    The Defendant will be subject to prosecution for any federal criminal violation, including, but not limited to, perjury and obstruction of justice, that is not time-barred by the applicable statute of limitations on the date this agreement is signed. Notwithstanding the subsequent expiration of the statute of limitations, in any such prosecution, the Defendant agrees to waive any statute-of-limitations defense not available to him as of the date this agreement is signed, and agrees to waive any challenge to venue related to Indictment 1:18-cr-111 pending against the Defendant in the Eastern District of Virginia.

PLEA AGREEMENT - 17

iii)     Any prosecution, including the prosecution that is the subject of this agreement, may be premised upon any information provided, or statements made, by the Defendant, and all such information, statements, and leads derived therefrom may be used against the Defendant. The Defendant waives any right to claim that statements made before or after the date of this agreement, including the statement of facts set forth in paragraph 9 of this agreement or adopted by the Defendant and any other statements made pursuant to this or any other agreement with the United States, should be excluded or suppressed under Fed. R. Evid. 410, Fed. R. Crim. P. 11(f), the Sentencing Guidelines, or any other provision of the Constitution or federal law.

iv)     Defendant agrees that Defendant shall return to the custody of the United Kingdom.

Any alleged breach of this agreement by either party shall be determined by the Court in a proceeding and at which the moving party shall be required to establish a breach of this Plea Agreement by a preponderance of the evidence.

16)     <u>Mandatory Special Penalty Assessment</u>:

The Defendant agrees to pay the $100 mandatory special penalty assessment to the Clerk of Court for the District of the NMI, at or before sentencing, pursuant to 18 U.S.C. § 3013 and shall provide a receipt from the Clerk to the United States before sentencing as proof of this payment.

17)     <u>Additional Violations of Law Can Void Plea Agreement</u>:

The Defendant and the United States agree that the United States may, at its option and upon written notice to the Defendant, withdraw from this Plea Agreement or modify its recommended sentence if, prior to the imposition of a sentence, the Defendant is charged or convicted of any

PLEA AGREEMENT - 18

1   criminal offense based on conduct that occurs between the entry of this agreement and sentencing or

2   if the Defendant tests positive for any controlled substance.

3   18)      Appeal Rights:

4         The Defendant understands that he has a limited right to appeal or challenge the conviction

5   and sentence imposed by the Court.  The Defendant hereby expressly waives his right to appeal his

6   conviction and the sentence the Court imposes, including any restitution order.  Defendant further

7   expressly waives his right to file any post-conviction motion attacking his conviction and sentence,

8   including a motion pursuant to 28 U.S.C. § 2255 and acknowledges that the filing of any such appeal

9   or motion would constitute a breach of this Plea Agreement under paragraph 15(b), above, except

10  one based upon ineffective assistance of counsel based on information not now known by the

11  Defendant and which, in the exercise of due diligence, could not be known by the Defendant by the

12  time the Court imposes the sentence.

13  19)      Waiver of FOIA and Privacy Act Rights:

14        The Defendant also hereby waives all rights, whether asserted directly or by a representative,

15  to request or receive from the United States any records pertaining to the United States Department

16  of Justice's criminal investigation, extradition, and/or prosecution of the Defendant, including

17  without limitation any records that may be sought under the Freedom of Information Act, 5 U.S.C.

18  § 552, or the Privacy Act, 5 U.S.C. § 552a.

19  20)      Hyde Amendment and Additional Waivers:

20        The Defendant waives any claim under the Hyde Amendment, 18 U.S.C. § 3006A (Statutory

21  Note), for attorney's fees and other litigation expenses arising out of the investigation or prosecution

22  of this matter.

23        The Defendant agrees and covenants that he and any person or entity acting on his behalf,

24  including, as applicable, successors and assigns (the "Releasing Parties"), hereby irrevocably waive,

PLEA AGREEMENT - 19

1  any and all rights, claims, demands, suits, causes of action, expenses, damages, judgments, orders

2  and liabilities arising directly or indirectly at law, contract or equity, out of the United States

3  Department of Justice's criminal investigation, extradition, and/or prosecution of the Defendant or in

4  connection thereto, which he may now, or in any future time, be entitled to bring before any

5  competent authority (in Australia, the United Kingdom, the United States, or worldwide) and/or any

6  court, tribunal or other judicial body (in Australia, the United Kingdom, the United States, or

7  worldwide).  The Defendant, on behalf of himself and the Releasing Parties, hereby releases and

8  forever discharges all and/or any actions, claims, rights, demands and set-offs, whether in this

9  jurisdiction or any other, and whether in law or equity, that he ever had, may have or hereafter can,

10  shall or may have against the United States arising out of or connected with the United States

11  Department of Justice's criminal investigation, extradition, and/or prosecution of the Defendant.

12  21)        Use of Plea Statements:

13          If, after signing this agreement, the Defendant decides not to plead guilty as provided herein,

14  or if the Defendant pleads guilty but subsequently makes a motion before the Court to withdraw his

15  guilty plea for a reason other than that the Court did not accept the Plea Agreement pursuant to Fed.

16  R. Crim. P. 11(c)(1)(C), and the Court grants that motion, the Defendant agrees that any admission

17  of guilt that he makes by signing this agreement or that he makes while pleading guilty as set forth in

18  this agreement may be used against him in a subsequent trial if the Defendant later proceeds to trial.

19  The Defendant voluntarily, knowingly, and intelligently waives any protection afforded by

20  Rule 11(f) of the Federal Rules of Criminal Procedure and Rule 410 of the Federal Rules of

21  Evidence regarding the use of statements made in this agreement or during the course of pleading

22  guilty when the guilty plea is later withdrawn.  The *only* exceptions to this paragraph is an instance

23  where the Defendant fully complies with this agreement but the Court nonetheless rejects it or the

24  Court accepts it but then imposes a sentence that fails to comply with 11(c)(1)(C) terms.  Under

PLEA AGREEMENT - 20

those circumstances, the United States may not affirmatively use those statements of the Defendant for any purpose.

22)         Return or Destruction of Information:

Before his plea is entered in Court, the Defendant shall take all action within his control to cause the return to the United States or the destruction of any such unpublished information in his possession, custody, or control, or that of WikiLeaks or any affiliate of WikiLeaks.  The Defendant further agrees that, if the forgoing obligation requires him to instruct the editor(s) of WikiLeaks to destroy any such information or otherwise cause it to be destroyed, he shall provide the United States (or cause to be provided to the United States) a sworn affidavit confirming the instruction he provided and that, he will, in good faith, seek to facilitate compliance with that instruction prior to sentencing.

23)         Plea Agreement as Part of the Record:

The Defendant agrees that this Plea Agreement shall be filed and become part of the public record in this case after the Rule 11 proceeding

24)         Integration Clause:

The United States and the Defendant acknowledge that this document constitutes the entire Plea Agreement between the United States and the Defendant, and no other promises, agreements, or conditions exist between the United States and the Defendant concerning the resolution of the case. This Plea Agreement is binding upon the United States Department of Justice, and cannot bind other state, or local authorities.  The United States and the Defendant agree that this agreement cannot be modified except in a writing that is signed by the United States and the Defendant.

Approvals and Signatures

Agreed and submitted on behalf of the United States Attorney's Office for the Districts of

PLEA AGREEMENT - 21

1 | Guam and the NMI and the National Security Division of the Department of Justice.

2

3 | Shawn N. Anderson
United States Attorney

Matthew G. Olsen
Assistant Attorney General
National Security Division

4 | _____ 6/25/2024

_____ 6/24/2024

5 | Shawn N. Anderson          Date
United States Attorney

Matthew J. McKenzie       Date
Deputy Chief

6 | Jacques Singer-Emery
Trial Attorney

7 | National Security Division

8

9 |         I have read this Plea Agreement and have carefully reviewed and discussed every part of the

agreement with my attorney. I understand and voluntarily enter into this Plea Agreement.

10 | Furthermore, I have consulted with my attorney about my rights, I understand those rights, and I am

11 | satisfied with the representation of my attorney in this case. No other promises or inducements have

12 | been made to me, other than those contained in this Plea Agreement and no one has threatened or

13 | forced me in any way to enter into this Plea Agreement. I am agreeing to plead guilty because I am

14 | guilty.

15 |         I further understand that if I am not a citizen of the United States, my guilty plea and

16 | conviction make it practically inevitable and a virtual certainty that I will be removed or deported

17 | from the United States. I agree that my attorney has told me this and that I still want to plead guilty.

18

19 | _____

_____

20 | JULIAN PAUL ASSANGE
Defendant

June 24, 2024
Date

21

22

23 | I have read the Plea Agreement and have discussed the contents of the agreement with my client.

24 | The Plea Agreement accurately and completely sets forth the entirety of the agreement between the

PLEA AGREEMENT - 22

1 | parties. I concur in my client's decision to plead guilty as set forth in the Plea Agreement. There is
2 | no legal reason why the Court should not accept the Defendant's plea of guilty.

3 |      I am also aware that my client is not a citizen of the United States, and that my client's guilty
4 | plea and conviction make it practically inevitable and a virtual certainty that my client will be
5 | removed or deported from the United States. I have advised my client of this and my client still
6 | wants to plead guilty.

Barry Pollack
Attorney for the Defendant

June 24, 2024
Date

PLEA AGREEMENT - 23